## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA

**JAHMELA HEADLEY, DARIA TERRELLI**     **CASE NO:**
**BRONSON THEODORE,**
**CHRISTY TURNQUIST**
**TORREY WHITE**, on behalf of themselves and others
    *Plaintiffs*

    v.

**BEACH HOUSE RECOVERY,**
    *Defendant.*

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

COMES NOW, Plaintiffs, JAHMELA HEADLEY, DARIA TERRELLI,

BRONSON THEODORE, CHRISTY TURNQUIST AND TORREY WHITE by

and through the undersigned counsel and sues the Defendant, BEACH

HOUSE RECOVERY, INC., (hereinafter "BEACH HOUSE" "Defendant") and

as follows:

## <u>JURISDICTION AND VENUE</u>

1.    Jurisdiction is invoked pursuant to 29 U.S.C §1331, 29 U.S.C §1332, 29

U.S.C § 1343 and 29 U.S.C § 1367 in that this is a civil action arising under the

Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act

of 1991 ("Section 1981"); Title VII, Civil Rights Act, 42 U.S.C. §§ 2000 et seq. as

amended ("Title VII"), Fair Labor Standards Act of 1938, as amended by the Equal Pay Act 29 U.S.C. §206 et seq., and the Florida Civil Rights Act of 1992, F.S. 760.10.

2.     Venue lies pursuant to 28 U.S.C. §1391(b), as Plaintiffs' claims arise out of their employment relationship with the Defendant, in that a substantial part of the events or motions giving rise to the claim occurred in this district which is located in the United States District Court for the Southern District of Florida, Palm Beach Division.

## **PARTIES**

1.     Plaintiffs, Jahmela Headley, Daria Terrelli, Bronson Theodore, Christy Turnquist and Torrey White all reside in Palm Beach County, Florida. At all material times was  employed with the Defendant within the meaning of Section 1981, Title VII of the Civil Rights Act of 1964 and the Florida Civil Rights Act.

2.     Beach House Recovery,  Inc.,  Defendant, is a Florida Corporation and at all relevant times doing business in the State of Florida, in this Judicial District, with a physical address of 13321 US-1, Juno Beach, FL 33408. Beach House provides substance abuse rehabilitation treatment for adults.

2

## GENERAL ALLEGATIONS

3.      At all times material, Defendant acted with malice and reckless disregard for Plaintiffs' federal and state protected rights.

4.      At all times material, the Plaintiffs were qualified to perform their job duties within the expectations of their employer.

5.      Plaintiffs has retained the undersigned counsel to represent them in this action and is obligated to pay them a reasonable fee for their services.

6.      Plaintiffs requests a jury trial for all issues so triable.

## ADMINISTRATIVE PREREQUISITES

7.      Plaintiff Jahmela Headley ("Ms. Headley" or "Headley") filed charges of discrimination with the Equal Employment and Opportunity Commission ("EEOC") and the Florida Commission on Human Relations on ("FCHR") on July 24, 2019, **Exhibit A**.

8.      On March 17, 2021, EEOC issued a dismissal and Notice of Rights to Ms. Headley.  A copy of the Dismissal and Notice of Rights is attached. **Exhibit B**. This Complaint has been filed within ninety (90) days of the receipt of the Dismissal and Notice of Rights; therefore, has met all conditions precedent to filing this Complaint.

9.     Plaintiff Daria Terrelli ("Ms. Terrelli" or "Terrelli") filed charges of discrimination with the Equal Employment and Opportunity Commission ("EEOC") and the Florida Commission on Human Relations on ("FCHR") on July 22, 2019, **Exhibit C**.

10.    On March 17, 2021, EEOC issued a dismissal and Notice of Rights to Ms. Terrelli.  A copy of the Dismissal and Notice of Rights is attached. **Exhibit D**. This Complaint has been filed within ninety (90) days of the receipt of the Dismissal and Notice of Rights; therefore, has met all conditions precedent to filing this Complaint.

11.    Plaintiff Bronson Theodore ("Mr. Theodore" or "Theodore") filed charges of discrimination with the Equal Employment and Opportunity Commission ("EEOC") and the Florida Commission on Human Relations on ("FCHR") on July 22, 2019, **Exhibit E**.

12.    On March 17, 2021, EEOC issued a dismissal and Notice of Rights to Mr. Theodore.  A copy of the Dismissal and Notice of Rights is attached. **Exhibit F**. This Complaint has been filed within ninety (90) days of the receipt of the Dismissal and Notice of Rights; therefore, has met all conditions precedent to filing this Complaint.

13.     Plaintiff Christy Turnquist ("Ms. Turnquist" or "Turnquist") filed charges of discrimination with the Equal Employment and Opportunity Commission ("EEOC") and the Florida Commission on Human Relations on ("FCHR") on July 23, 2019, **Exhibit G**.

14.     On March 19, 2021, EEOC issued a dismissal and Notice of Rights To Ms. Turnquist.  A copy of the Dismissal and Notice of Rights is attached. **Exhibit H**.  This Complaint has been filed within ninety (90) days of the receipt of the Dismissal and Notice of Rights; therefore, has met all conditions precedent to filing this Complaint.

15.     Plaintiff Torrey White, ("Mr. White" or "White") filed charges of discrimination with the Equal Employment and Opportunity Commission ("EEOC") and the Florida Commission on Human Relations on ("FCHR") on July 14, 2019, **Exhibit I**.

16.     On March 17, 2021, EEOC issued a dismissal and Notice of Rights to Mr. White.  A copy of the Dismissal and Notice of Rights is attached. **Exhibit J**.  This Complaint has been filed within ninety (90) days of the receipt of the Dismissal and Notice of Rights; therefore, has met all conditions precedent to filing this Complaint.

17.     Plaintiffs have satisfied all conditions precedent, therefore jurisdiction over this claim is appropriate pursuant to Chapter 760, *Florida Statues*, because more than one-hundred and eight (180) days have passed since the filing of this Charge.

## FACTUAL ALLEGATIONS

18.     Plaintiffs Headley, Terrelli, Theodore, Turnquist and White are all African American employees formerly employed with the Defendant.

### JAHMELA HEADLEY

19.     Ms. Headley was hired as an employee by the Defendant on or around November 2018.

20.     Ms. Headley was hired as a full-time employee as a Therapist.

21.     Ms. Headley worked on a full-time basis and typically worked forty (40) or more hours each week.

22.     Ms. Headley's immediate supervisor was Kristina Dygulski ("Dygulski") (Caucasian).

23.     Defendant employs more than fifty (50) employees within a seventy-five (75) mile radius of the workplace.

24.     There were several therapists under the direct supervision of Dygulski. Most the therapist were of Caucasian descent.

6

25.    Ms. Headley's work duties entailed meeting with clients assigned to her caseload for individual sessions and meeting with their families in separate sessions.  After the completion of each of the sessions, Plaintiff Headley and other therapists were required to produce computer generated clinical session notes.

26.    Ms. Headley timely submitted her session notes as required by her work duties.

27.    Ms. Headley, despite providing timely session note submissions, was consistently placed on a companywide distributed "corrections list."

28.    The corrections list was updated and disseminated on a daily basis containing a list of names of employees failing to meet assignment thresholds.

29.    Ms. Headley was aware of Caucasian therapist who routinely failed to submit their session notes, however, were never placed on the daily "corrections list."

30.    Ms. Headley also observed African American employees were consistently placed on the corrections list despite performing their assigned work duties, while Caucasian employees similarly situated actual failure to comply was not acknowledged on the corrections list.

31.     Ms. Headley also observed that she was assigned a heavier caseload than her Caucasian counterparts.

32.     Ms. Headley complained about the inaccuracies of her placement on the corrections list, and disproportionate workload compared to Caucasian therapists.

33.     After Ms. Headley complained to her direct supervisor about the disparate treatment regarding assignments and discipline, on or around January 15, 2019, Ms. Headley received her first verbal warning from Dygulski.

34.     Thereafter, Ms. Headley's placement on the corrections list and her workload increased, despite the timely and accurate performance of her work duties.

35.     The increased workload in which Ms. Headley issue complaints about, eventually lead to a few late submissions for clinical notes.  However, again, Caucasian workers regularly failed to timely submit clinical notes, despite having lower caseloads, but were never disciplined.

36.     On or around early March 2019, Ms. Headley again addressed the inaccuracies regarding the reporting of her performance on the corrections list to her supervisor, despite continually observing the Caucasian therapists

8

evade placement of the corrections list during this time who were failing to meet the assignment thresholds.

37.     Ms. Headley also noticed, after her initial complaints about disparate treatment, she was ostracized by management; the work environment became tense and hostile; and her work product received considerable scrutiny from management versus the Caucasian therapists who were not meeting daily criteria for timely submissions.

38.     After Ms. Headley's second complaint about disparate treatment, Ms. Headley was then issued a written warning despite continual timely submissions of assignments.

39.     Ms. Headley's attempt to address the disparity in treatment was met with ongoing retaliation by management who continued to falsely accuse her of failing to perform work assignments.

40.     On or about March 12, 2019, after being summoned for another meeting with management presumably about her work performance, was constructively discharged from her employment with the Defendant after she issued a resignation effective immediately.

41.    Moreover, Ms. Headley also observed the disparate treatment of other African American therapists, and employees in other roles who were employed with the Defendant.

DARIA TERRELLI

42.    Plaintiff Ms. Terrelli was hired by the Defendant on or about June 2018.

43.    Ms. Terrelli was hired as a full-time employee as a Behavioral Health Technician (BHT) .

44.    Ms. Terrelli worked on a full-time basis and typically worked forty (40) or more hours each week.

45.    The immediate supervisor of Ms. Terrelli was Mirna Marcinia ("Marcinia") (Hispanic/Caucasian).

46.    There were several technicians under the direct supervision of Marcinia, who were of Caucasian and Hispanic descent.

47.    Ms. Terrelli's work duties entailed assisting residential clients with their daily living needs.  Her role also entailed a rotation among assigned locations in order to equally apportion the workload among similarly situated employees.

48.     Ms.  Terrelli excelled at her position as a BHT; she never received any known disciplinary actions or negative reviews during the entirety of her employment.

49.     Ms. Terrelli was routinely assigned, in her position as a BHT, to heavier workloads than Caucasian BHTs.  A high caseload entailed being assigned single-handedly to monitor and provide for the needs of multiple clients, which required regularly handling between 15-20 clients when the clinical therapeutically acceptable ratio was 8:1,  without the assistance of another BHT, despite them being available to assist.

50.     Ms. Terrelli observed Caucasian and or Hispanic BHT's assigned to much lower client assignments, and if they were required to monitor high client assignments, other BHT employees would assist them, versus Ms. Terrelli and other African American BHT employees who were required to manage the assignments without assistance.

51.     Ms. Terrelli's position as a BHT was scheduled for rotation to varying location assignments within the grounds of the Defendant in order to equalize the assignments among the techs.  Ms. Terrelli and the other African Americans BHTs were not routinely rotated to location assignments with lighter workloads by Marcinia and other members of management.  Members

of management would assign the Caucasian and Hispanic BHTs to the easier assignments at those locations despite the requirement to rotate the BHT to varying assignment locales.

52.    Ms. Terrelli also noted when African American workers complained about the heavier workloads or lack of rotation they were targeted for retaliation or terminated on pre-textual grounds.

53.    During periods of her employment Ms. Terrelli requested leave time to attend to personal matters.  Ms. Terrelli observed her requests for leave time, despite having the required Paid Time Off (PTO) hours accrued to take leave to be consistently denied, or severely scrutinized by Marcinia and management.  She also noticed the denial of leave and scrutiny only occurring to herself and other African American employees.

54.    Ms. Terrelli observed the denial and scrutiny did not occur to Caucasian BHT employees when they requested leave time.

55.    Despite the lack of rotation and the disproportionate number of clients Ms. Terrelli excelled to the point she was offered a promotion to a Clinical Behavioral Health Tech along with a Caucasian male counterpart.

56.    Ms. Terrelli began to assume the duties of the Clinical BHT along with the Caucasian male counterpart.

12

57.     Ms. Terrelli  learned the Caucasian male immediately received a higher pay rate than her, despite the promotion to the same position.

58.     When Ms. Terrelli complained about the disparity in pay along with the heavier workloads, she was rebuffed by members of management.  She was initially told it was an oversight and she should expect the pay increase during the next pay period.

59.     When the pay increase was not reflected in her wages, Ms. Terrelli again inquired to management.

60.     After Ms. Terrelli complained about the disparity in wages management along with complaints of disparate treatment, the Defendant began to closely monitor Ms. Terrelli.

61.     Ms. Terrelli noticed the patterned of targeting directed towards other African Americans after complaints of disparate treatment.

62.     On or about March 26, 2019, inexplicably, Ms. Terrelli was summoned from her duties and escorted from the property of the Defendant and was terminated without notice.

<u>BRONSON THEODORE</u>

63.     Mr. Theodore was hired by the Defendant on or about October 2016.

64.     Mr. Theodore was initially hired as a full-time employee as a  Behavioral Health Technician (BHT).

65.     At some point during his employment in 2017 he was offered and accepted the position of Intake Coordinator.

66.     Mr. Theodore during this period worked on a full-time basis and typically worked forty (40) or more hours each week.

67.     The immediate supervisor of Mr. Theodore was Mirna Marcinia ("Marcinia") (Hispanic/Caucasian).

68.     There were several technicians under the direct supervision of Marcinia, who were of Caucasian and Hispanic descent.

69.     Mr. Theodore's work duties as a BHT entailed assisting residential clients with their daily living needs.  His role also entailed a rotation among assigned locations in order to equally apportion the workload among similarly situated employees.

70.     Mr. Theodore also excelled at his position as a BHT, to the point that in March 2017, he was offered the position of an Intake Coordinator.  The position included a modest hourly pay increase with different job duties than that of a BHT.  In this role, Mr. Theodore was required to meet with and perform intake duties for clients newly admitted to the facility.

14

71.     Despite the promotion to Intake Coordinator, Mr. Theodore was still expected by management to perform the duties of a BHT in addition his new position.

72.     Mr. Theodore complained to Marcinia, his immediate supervisor regarding the workload.  He specifically complained of being routinely assigned to heavier workloads than Caucasian or Hispanic BHTs.

73.     The disproportionate work assignments continued despite the complaints of Mr. Theodore; and after being ignored by management, Mr. Theodore voluntarily relinquished the role of Intake Coordinator and solely assumed the role of a BHT.   Mr.  Theodore also requested an assignment to a "per diem" worker after he stepped down from the role of Intake Coordinator, thereby reducing his employment from full-time to part time.

74.     As a per diem worker, Mr. Theodore, if summoned to work for the day could decide if he wanted to accept the shift, as he was not assigned to a designated work schedule.

75.     After Mr. Theodore returned to his position as a BHT, he continued to be assigned to high client monitoring ratio.  The monitoring entailed being assigned single-handedly to monitor and provide for the needs of multiple clients, regularly handling between 15-20 clients when the clinical

15

therapeutically acceptable ratio should be 8:1,  without the assistance of another BHT, despite them being available to assist.

76.     Mr. Theodore observed Caucasian and or Hispanic BHT's assigned to much lower client ratios; and if they were required to monitor high client assignments, other BHT employees would be reassigned assist them, as opposed to Mr. Theodore and other African American BHT employees who were required to manage the assignments without assistance.

77.     Mr. Theodore's position as a BHT is scheduled for rotation to varying location assignments within the grounds of the Defendant in order to equalize the assignments among the techs.  Mr. Theodore and the other African Americans BHTs were not routinely rotated to location assignments with lighter workloads by Marcinia and other members of management.  Members of management would assign the Caucasian or Hispanic BHTs to the easier assignments at those locations despite the requirement to rotate the BHT to varying assignment locales.

78.     Mr. Theodore also noted when he or other African American workers complained about the heavier workloads or lack of rotation they were targeted for closer scrutiny, retaliation or terminated on pre-textual grounds.

79.     During periods of his employment, Mr. Theodore requested leave time to attend to personal matters.  Mr. Theodore observed his requests for leave time, despite having the required Paid Time Off (PTO) hours accrued to take leave was consistently denied, or severely scrutinized by Marcinia and management.  He also noticed the denial of leave and scrutiny only occurring to  African American employees.

80.     Mr. Theodore observed the denial and scrutiny did not occur to Caucasian or Hispanic BHT employees when they requested leave time.

81.     Mr. Theodore was frequently disciplined and threatened with termination for requesting PTO leave requests to attend to the emergency medical needs of his father.  Mr. Theodore would appropriately notify management and/or provide documentation of any tardiness.  Mr. Theodore was still disciplined despite appropriate notification to management, however, Mr. Theodore observed Caucasian or Hispanic workers were not disciplined for similar acts.

82.     Despite Mr. Theodore's complaints, the disparate workloads and disparate treatment continued by Marcinia and management.

83.     Mr. Theodore was routinely requested to engage in assignments violative of company rules and therapeutic norms on multiple occasions by

Marcinia which would be a terminable offense if he engaged in the requests.
Mr. Theodore viewed this as a targeted form of retaliation in order to form the
basis to terminate his employment after his complaints of disparate treatment
due to race.

84. On March 22, 2019 after being targeted by management, Mr. Theodore
was constructively discharged when he issued an immediate resignation.

### CHRISTY TURNQUIST

85. Ms. Turnquist was hired as a full-time employee by the Defendant as a
Therapist.

86. Ms. Turnquist worked on a full-time basis and typically worked forty
(40) or more hours each week.

87. Ms. Turnquist's immediate supervisor was Anna Ciulla ("Ciulla")
(Caucasian).

88. Defendant employs more than fifty (50) employees within a seventy-five
(75) mile radius of the workplace.

89. There were several therapists under the direct supervision of Ciulla.
Most the therapist were of Caucasian descent.

90. Ms. Turnquist's work duties entailed meeting with clients assigned to
her caseload for individual sessions and meeting with their families in

separate sessions.  After the completion of each of the sessions, Ms. Turnquist and other therapists were required to produce computer generated clinical session notes.

91.    Ms. Turnquist timely submitted her session notes as required by her work duties.

92.    Ms. Turnquist, despite providing timely clinical note submissions, was consistently placed on a companywide distributed "corrections list."

93.    The corrections list was updated and disseminated on a daily basis containing a list of names of employees failing to meet assignment thresholds.

94.    Ms. Turnquist was aware of similarly situated Caucasian therapists who routinely failed to submit their daily session notes, however, were never placed on the daily "corrections list."

95.    Ms. Turnquist also observed African American employees  consistently assigned to the corrections list despite performing their assigned work duties, while Caucasian therapists actual failure to comply was not acknowledged on the corrections list.

96.    Ms. Turnquist also observed that she was assigned a heavier caseload than her Caucasian counterparts.

97.    Ms. Turnquist complained about the inaccuracies of her placement on the corrections list, and disproportionate workload compared to Caucasian therapists.

98.    After Ms. Turnquist complained to management, she was targeted for closer scrutiny and retaliation.  Ms. Turnquist work product was now being labeled as too detailed after being informed her notes lacked detail.

99.    Ms. Turnquist's placement on the corrections list and her workload increased, despite the timely and accurate performance of her work duties.

100.   Ms. Turnquist, while still being placed inaccurately on the corrections list, also begin to receive counseling and corrective actions.

101.   On around March 2019, Ms. Turnquist continued to  address the inaccuracies regarding the reporting of her performance on the corrections list to management, despite continually observing the Caucasian therapists evade placement of the corrections list during this time who were failing to meet the assignment thresholds.

102.   Ms. Turnquist's attempt to address the disparity in treatment was met with ongoing retaliation by management who continued to falsely accuse her of failing to perform work assignments.

103.   On or about March 26, 2019, after being summoned for another meeting with management, presumably about her work performance, Ms. Turnquist was voluntarily terminated from her employment.

104.   Moreover, Ms. Turnquist also observed the disparate treatment of other African American therapists, and employees in other roles who were employed with the Defendant.

<u>TORREY WHITE</u>

105.   Mr. White was hired as an employee for the Defendant on or around October 2018.

106.   Mr. White was hired as a full-time employee as a Case Manager.

107.   Mr. White worked on a full-time basis and typically worked forty (40) or more hours each week.

108.   The immediate supervisor of Mr. White was Brendan Chew ("Chew") (Caucasian).

109.   There were several case managers under the direct supervision of Chew.

110.   Mr. White's work duties as a Case Manager entailed assisting residential clients with their daily living needs.

111.   Mr. White noticed, soon after his employment, disparate treatment and differing conditions of employment for himself as an African American as opposed to the Caucasian and Hispanic employees of the Defendant.

112.   Mr. White received limited training by Chew after he assumed the role of case manager.  The majority of his training was subsumed by other case managers rather than his direct supervisor Chew.  The semblance of training received was inadequate and lacked the thoroughness of formal training.

113.   While assisting a client, Mr. White inadvertently failed to complete the discharge documents for a client because of his inadequate training for the position.  Mr. White was immediately issued a disciplinary warning without being able to explain the omission was due to lack of training.

114.   Mr. White observed Caucasian and or Hispanic case managers, who had more extensive training, inaccurately complete or haphazardly omit documents during client interactions.  Management was aware of the errors; however, those employees were not disciplined.

115.   Mr. White was falsely accused of the loss of a company cell phone.  Mr. White, despite not being responsible for the loss of the phone, was required to personally reimburse the Defendant the cost of the lost property.  Further, he was verbally berated by management and issued a disciplinary warning,

despite denying any connection with the incident. However, on or around the same time, a Caucasian female employee was identifiably responsible for the loss of the company cell phone and no financial reimbursement was required of her and neither was she verbally berated or issued a disciplinary warning.

116. Mr. White was routinely assigned to heavier workloads than Caucasian or Hispanic case managers. Mr. White, in addition to performing the role of Case Manager, was often assigned to perform transportation duties, and BHT duties, while he observed Caucasian or Hispanic employees being assigned to singular lighter duties.

117. Mr. White complained to Chew, his immediate supervisor, regarding the disproportionate workload, and inadequate training being violative of company policy and potentially posing a safety risks to clients.

118. Mr. White was candid with management regarding his overall treatment being attributable to his race.

119. A specific request from management was directed towards Mr. White to engage in yet another duty, while he was already overburdened with multiple assignments. Mr. White's inability to assume another duty after the request, was met an involuntary termination by the Defendant on April 8, 2019.

## COUNT I

## <u>TITLE VII – RACE DISCRIMINATION</u>

120.   Plaintiffs, re-alleges and adopts as set forth herein, each and every allegation contained in the previous paragraphs in this Complaint.

121.   Plaintiffs are members of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* as amended by the Civil Rights Act of 1991 (Title VII).

122.   Plaintiffs were employees, and the Defendant was their employer covered by and within the meaning of Title VII.

123.   By the conduct described above, Defendant has engaged in unlawful employment practices and discriminated against the Plaintiffs because of their race, in violation of Title VII.

124.   The aforementioned acts of race discrimination constitute a violation of Title VII of the Civil Rights Act, as amended for which the Defendant is liable.

125.   Defendant's unlawful discriminatory employment practices toward the Plaintiffs were intentional.

126.   Defendant's unlawful and discriminatory employment practices were done with malice or reckless indifference to protected rights of the Plaintiffs.

127.   As a result of the Defendant's unlaw discrimination, Plaintiffs have suffered and continue to suffer damages.

128.   To remedy the violations of the rights of Plaintiffs secured by Title VII, Plaintiffs requests that the Court award them the relief prayed for below.

**COUNT II**

**<u>TITLE VII – RACE DISCRIMINATION – (RETALIATION)</u>**

129.   Plaintiffs re-alleges and adopts as set forth herein, each and every allegation contained in the previous paragraphs in this Complaint.

130.   Plaintiffs are members of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* as amended by the Civil Rights Act of 1991 (Title VII).

131.   Plaintiffs were employees, and the Defendant was their employer covered by and within the meaning of Title VII.

132.   Plaintiffs suffered an adverse employment action for engaging in protected activity under Title VII.  Specifically, Plaintiffs were retaliated against by Defendant when they complained about disparate treatment.

133.   Plaintiffs suffered continued adverse employment actions and were retaliated against by Defendant, after Plaintiffs continued to complain about disparate treatment.

134.   The above-described acts of retaliation constitutes a violation of Title VII.

135.   Defendant's unlawful and retaliatory employment practices toward Plaintiffs were intentional.

136.   Defendant's unlawful and retaliatory reemployment practices were done with malice or with reckless indifference to the federal protected right of the Plaintiffs.

137.   As a result of Defendant's unlawful discrimination, Plaintiffs have suffered and continue to suffer damages.

138.   To remedy the violations of the rights of Plaintiffs secured by Title VII, Plaintiffs requests that the Court award them the relief prayed for below.

## COUNT III

## <u>FLORIDA CIVIL RIGHTS ACT OF 1992 – (RACE)</u>

139.   Plaintiffs re-alleges and adopts as set forth herein, each and every allegation contained in the previous paragraphs in this Complaint.

140.   Plaintiffs are members of a protected class under Florida Civil Rights Act, Chapter 760, *Florida Statutes* ("FCRA").

141.   Plaintiffs were employees, and the Defendant was their employer covered by and within the meaning of the Florida Civil Rights Statute of the FCRA.

142.   As Plaintiffs' employer, Defendants had a duty to refrain from discrimination against the Plaintiffs on the basis of race.

143.   Defendant, by the conduct described above, engaged in unlawful practices and discriminated against the Plaintiffs because of their race.

144.   Defendant's retaliation, disparate treatment and subsequent termination of the Plaintiffs' employment as described above, were based on their race.

145.   Defendant treated Caucasian and Hispanic employees more favorably than Plaintiffs in the terms, conditions and or/benefits of employment.

146.   The actions of the Defendant were intentional and in deliberate disregard of the rights of the Plaintiffs.

147.   As a result of Defendant's unlawful discrimination, Plaintiffs have suffered and continue to suffer damages.

148.   To remedy the violations of the rights of Plaintiffs secured by Florida Civil Rights Act, Plaintiffs requests that the Court award them the relief prayed for below.

## COUNT IV

## FLORIDA CIVIL RIGHTS ACT OF 1992 – (RETALIATION-RACE)

149.   Plaintiffs re-alleges and adopts as set forth herein, each and every allegation contained in the previous paragraphs in this Complaint.

150.   Plaintiffs are members of a protected class under Florida Civil Rights Act, Chapter 760, *Florida Statutes* ("FCRA).

151.   Plaintiffs were employees, and the Defendant was their employer covered by and within the meaning of the Florida Civil Rights Act.

152.   Plaintiffs engaged in protected activity by opposing employment practices made unlawful by the Florida Civil Rights Act. Plaintiffs were retaliated against by Defendant for their complaints about disparate treatment.

153.   The adverse employment action suffered by Plaintiffs by the actions of Defendant is causally connected to their complaints of disparate treatment.

154.   The aforementioned conduct by Defendant constitutes retaliation by Defendant in violation of the Florida Civil Rights Act.

155.   Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the state-protected rights of Plaintiffs.

28

156.   As a result of Defendant's unlawful retaliation, Plaintiffs have suffered and continue to suffer damages.

157.   To remedy the violations of the rights of Plaintiffs secured by Florida Civil Rights Act, Plaintiffs requests that the Court award them the relief prayed for below.

## COUNT V

## 42 U.S.C. §1981

158.   Plaintiffs re-alleges and adopts as set forth herein, the paragraphs in each and every allegation contained in this Complaint.

159.   Plaintiffs are members of a protected class afforded to them by the Civil Rights Act 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991.

160.   By the conduct described above, the Defendant, a private employer, deprived the Plaintiffs of the same rights as enjoyed by white citizens to the creation, performance and all benefits and privileges, of their contractual employment relationship in violation of 42 U.S.C. §1981.

161.   As a result of Defendant's discrimination in violation of Section 1981, the Plaintiffs was denied employment opportunities providing substantial compensation and benefits.

162.   The actions of the Defendant were intentional and deliberate.

163.   Defendant's unlawful and discriminatory employment practices were done with malice or with reckless indifference to the federally protected rights of Plaintiffs.

164.   As a result of Defendant's discriminatory practices, Plaintiffs have suffered and continue to suffer damages.

165.   To remedy the violations of the rights of Plaintiffs secured by Section 1981, Plaintiffs requests that the Court award them the relief prayed for below.

**COUNT VII**

**<u>EQUAL PAY ACT</u>**

**<u>(The Fair Labor Standards Act of 1938, as amended by the Equal Pay Act 29 U.S.C. §206 et seq.)</u>**

166.   Plaintiff, DARIA TERRELLI, re-alleges and adopts as set forth herein, the allegations in paragraphs forty-three (43) through sixty-two (62).

167.   The Defendant has discriminated against Plaintiff Terrelli in violation of the Fair Labor Standards Act of 1938, as amended by the Equal Pay Act 29 U.S.C. §206 et seq. ("EPA").

168.   The Defendant paid the Plaintiff Terrelli less than a similarly situated male employee performing equal work on jobs the performance of which

require equal skill, effort, responsibility and which are performed under similar working conditions.

169.   The difference in pay to the similarly situated male is not attributable to seniority, merit or incentive system or any other factor other than sex, but was because of gender.

170.   The Defendant perpetuated gender-based wage discrimination in violation of the EPA.

171.   The foregoing constitutes a willful violation of the EPA within the meaning of 29 U.S.C. §255(a).  The three-year statute of limitations applies to the Defendant's violations because the Defendant's violations were willful.

172.   As a result of the gender based discriminatory policies and or practices of the Defendant Plaintiff Terrelli has suffered damages in including, but not limited to

173.   To  remedy the violations of the rights of Plaintiff Terrelli secured by the EPA, Plaintiff Terrelli requests that the Court award her the relief prayed for below.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, the Plaintiffs demands judgment against Defendant and prays for the following relief:

A.    Award the Plaintiffs back pay and benefits;

B.    Prejudgment interest on back pay and benefits;

C.    Front pay and benefits;

D.    Liquidated damages;

E.    Compensatory damages for mental anguish, emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation;

F.    Punitive damages;

G.    Attorneys' fees and costs;

H.    Injunctive Relief; and

I.    Award Plaintiffs all other relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs, demand a trial by jury on all issues so triable.

.

Date: June 15, 2021                    By: /s/Octavia Brown
                                       **Octavia Brown, Esq.,**
                                       Florida Bar Number: 0011778
                                       Octavia.brown@community-lawyer.com
                                       **Community Law, PLLC**
                                       3104 N. Armenia Avenue, STE 2
                                       Tampa, Florida 33607
                                       PH:   (813) 822-3522
                                       FAX: (863) 250-8228
                                       *Trial Attorneys for Plaintiffs*

EXHIBIT "A"

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA | |
| | ☒ EEOC | 510-2019-0552 9 |

| Florida Commission On Human Relations | | and EEOC |
|---|---|---|
| *State or local Agency, if any* | | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Jahmela Headley** | **469-338-9051** | **08/07/1991** |

| Street Address | City, State and ZIP Code |
|---|---|
| **441 N.W. 36th Avenue, Deerfield Beach, Florida 33442** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **Beach House Center for Recovery** | **Over 30** | **561-337-3200** |

| Street Address | City, State and ZIP Code |
|---|---|
| **13321 U.S. 1, Juno Beach, Florida 33408** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| RECEIVED | | |

| Street Address | City, State and ZIP Code |
|---|---|
| JUL 31 2019 | |

EEOC MIAMI DISTRICT OFFICE

| DISCRIMINATION BASED ON *(Check appropriate box(es))* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest | Latest |

| ☒ RACE | ☐ COLOR | ☐ SEX | ☐ RELIGION | ☐ NATIONAL ORIGIN | **10/2018** | **3/19/2019** |
| ☒ RETALIATION | ☐ AGE | ☐ DISABILITY | ☐ GENETIC INFORMATION | | |
| ☒ OTHER *(Specify)* | | | ☐ CONTINUING ACTION | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

1. I began employment with Beach House Center for Recovery in November 2018 as a Therapist.

2. Beach House Center for Recovery provides substance abuse rehabilitation treatment for adults.

3. I was employed as a full-time employee.

4. My immediate supervisor was Christina Dygulski (Caucasian).

5. My job duties entailed meeting with clients for individual sessions and meeting with their families in separate sessions. After the completion of each of the sessions, I and other therapist were required to produce notes to reflect what occurred during the session.

6. I was treated differently than the therapist of Caucasian descent. Despite performing my assigned work duties and submitting my client notes, I was placed on the daily "corrections' list regarding my work product. I was aware similarly situated white therapists actually and routinely failed to timely submit their daily session notes, however they were not placed on the company wide "corrections" list, additionally they did not receive the scrutiny as I did regarding their session notes.

7. The corrections list is generated daily and is disseminated company-wide. The list is a display of employees with open or incomplete assignments. I and other black employees, and more often than not only the black employees were consistently placed on the list; and often, the list was inaccurate.

8. I discussed the inaccuracies of the corrections list with my manager.

9. After I brought the inaccuracies of the corrections list to the attention of my immediate supervisor the targeting increased. The assignments on the corrections list increased despite

the assignments being completed. When I again addressed the inaccuracies, the targeting increased, and the work environment continued to be tense and hostile. Because of the increase in assigning inaccuracies to my work product I decided I could no longer remained employed with Beach House. Instead of issuing a two week notice, I issued a resignation, effectively on March, 19, 2019.

10. I believe Respondent discriminated against me because of race (black), in violation of Title VII of the Civil Rights Act, 1964 as amended, engaged in retaliation, and created a hostile work environment while I engaged in a protected activity.

Nothing to follow.

RECEIVED

JUL 3 1 2019

EEOC-MIAMI DISTRICT OFFICE

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – When necessary for State and Local Agency Requirements

I declare under penalty of perjury that the above is true and correct.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

07/24/2019

Jahmari Headley (Jul 24, 2019)

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

Date

Charging Party Signature

RECEIVED

JUL 3 1 2019

EEOC-MIAMI DISTRICT OFFICE

EEOC Form 161-B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | **Jahmela Headley**<br>**441 N.W 36th Avenue**<br>**Deerfield Beach, FL 33442** | From: | **Miami District Office**<br>**Miami Tower, 100 S E 2nd Street**<br>**Suite 1500**<br>**Miami, FL 33131** |
|---|---|---|---|

| | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **510-2019-05529** | **Frank C. Hernandez,**<br>**Investigator** | **(786) 648-5824** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

| [X] | More than 180 days have passed since the filing of this charge. |
|---|---|
| [ ] | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| [X] | The EEOC is terminating its processing of this charge. |
| [ ] | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

| [ ] | The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost. |
|---|---|
| [ ] | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Marissa Cosculluela

Digitally signed by Marissa Cosculluela
DN: cn=Marissa Cosculluela, o, ou=EEOC - Miami
District Office,
email=Marissa.Cosculluela@eeoc.gov, c=US
Date: 2021.03.17 12:38:24 -04'00'

03/17/2021

Enclosures(s)

For: **Paul V. Valenti**
**District Director**

*(Date Issued)*

cc:

| **Gunster Yoakley And Stewart, P.A.**<br>**Holly L. Grffin, Esq.**<br>**777 South Flagler Dr. Suite 500E**<br>**West Palm Beach, FL 33401** | **Community Law, LLC.**<br>**Octavia O. Brown, Esq.**<br>**122 E Main street # 233**<br>**Lakeland, FL 33801** |
|---|---|

EXHIBIT "C"

EEOC Form 5 (11/09)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 510-2019-05527 |

**Florida Commission On Human Relations** and EEOC

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Daria Terrelli** | **772-353-1991** | 10/06/1991 |

| Street Address | City, State and ZIP Code |
|---|---|
| **1849 Port St. Lucie, Florida 34953** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **Beach House Center for Recovery** | **Over 30** | **561-337-3200** |

| Street Address | City, State and ZIP Code |
|---|---|
| **13321 U.S. 1, Juno Beach, Florida 33408** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| RECEIVED | | |

| Street Address | City, State and ZIP Code |
|---|---|
| JUL 3 1 2019 | |

EEOC-MIAMI DISTRICT OFFICE

DISCRIMINATION BASED ON (Check appropriate box(es).)

| | | | | | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|---|---|---|---|
| | | | | | Earliest / Latest |
| ☒ RACE | ☐ COLOR | ☐ SEX | ☐ RELIGION | ☐ NATIONAL ORIGIN | 3/26/2019 |
| ☒ RETALIATION | ☐ AGE | ☐ DISABILITY | ☐ GENETIC INFORMATION | | |
| ☒ OTHER (Specify) | | | | | ☒ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

1. I began employment with Beach House Center for Recovery (Beach House) in 2018 as a Behavioral Health Tech.

2. Beach House provides substance abuse rehabilitation treatment for adults.

3. I was employed as a full-time employee.

4. My immediate supervisor was Myrna Marcinia (White/Hispanic).

5. My job duties entailed assisting clients in the residential setting with their daily needs.

6. I never received any disciplinary actions or negative reviews during my employment with Beach House.

7. I was treated differently than technicians of Caucasian descent. The request for leave was not equally granted. I appropriately requested PTO time off for personal reasons and was consistently denied the use of my PTO. Caucasian workers were granted their time off when they requested to do so without issue, however I and other African-American workers were consistently denied time off or closely scrutinized when leave was requested.

8. I was routinely assigned heavier workloads and duties than Caucasian or Hispanic workers. I was required to work overtime without compensation. I noticed if black employees complained about the unequal treatment, they were targeted or terminated.

9. At some point, I and another Caucasian technician earned promotions to the position of Clinical Behavioral Health Technicians. He was granted the pay raise for the promotion and I was not.

10. When I began to inquire regarding the reason for the disparity in pay, I was consistently rebuffed; I then began to be closely monitored.

11. On March 26, 2019, I was informed of my termination and escorted from the property of Beach House. I am still unaware of the reasons for my termination.

12. I believe Respondent, while I was engaged in a protected activity, discriminated against me because of race (black), denied equal compensation, created a hostile environment and engaged in retaliation in violation of Title VII of the Civil Rights Act, 1964 as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br><br>SIGNATURE OF COMPLAINANT |
| 07/22/2019     Danae Preston (Jul 22, 2019) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date        Charging Party Signature | |

RECEIVED

JUL 3 1 2019

EEOC-MIAMI DISTRICT OFFICE

EXHIBIT "D"EXHI

EEOC Form 161-B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | **Daria Terrelli**<br>**c/o Octavia, Brown, Esq.**<br>**Community Law, LLC.**<br>**122 E Main Street #233**<br>**Lakeland, FL 33801** | From: | **Miami District Office**<br>**Miami Tower, 100 S E 2nd Street**<br>**Suite 1500**<br>**Miami, FL 33131** |
|---|---|---|---|

☐  *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **510-2019-05527** | **Frank C. Hernandez,**<br>**Investigator** | **(786) 648-5824** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒  More than 180 days have passed since the filing of this charge.

☐  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

03/17/2021

Enclosures(s)

For: **Paul V. Valenti,**
**District Director**

*(Date Issued)*

cc: **Gunster, Yoakley And Stewart, P.A.**
**Holly L. Griffin, Esq.**
**777 South Flagler Dr. Suite 500E**
**West Palm Beach, FL 33401**

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 510-2019-05526 |

Florida Commission On Human Relations — and EEOC

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Bronson Theodore | 561-268-4445 | 03/26/1985 |

| Street Address | City, State and ZIP Code |
|---|---|
| 126 Bilbao Street Royal, Palm Beach, Florida 33411 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Beach House Center for Recovery | Over 30 | 561-337-3200 |

| Street Address | City, State and ZIP Code |
|---|---|
| 13321 U.S. 1, Juno Beach, Florida 33408 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| RECEIVED | | |

| Street Address | City, State and ZIP Code |
|---|---|
| JUL 31 2019 | |

EEOC-MIAMI DISTRICT OFFICE

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☒ OTHER (Specify)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 10/2016 | 3/2019 |

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

1. I began employment with Beach House Center for Recovery (Beach House) in 2016 as an Intake Coordinator. Before I left my employment with Beach House, my position was that of a Behavioral Health Tech.

2. Beach House provides substance abuse rehabilitation treatment for adults.

3. I was employed as a full-time employee then as a per diem employee.

4. My immediate supervisor was Myrna Marcinia (White/Hispanic).

5. My job duties entailed assisting clients in the residential setting with their daily needs.

6. I was treated differently than technicians of Caucasian descent. The request for leave was not equally granted. Despite providing appropriate documentation regarding the reasons for leave time. I was issued a disciplinary action because my father had an emergency health crisis which necessitated my need to attend to his status in the hospital. There were times that I appropriately requested PTO time off for personal reasons and was consistently denied the use of my PTO. Caucasian workers were granted use of PTO leave when they requested to do so without issue, however I and other African-American workers were consistently denied time off, closely scrutinized or disciplined when leave was requested.

7. I was routinely assigned heavier workloads and duties than Caucasian or Hispanic workers. I noticed if black employees complained about the unequal treatment, they were targeted or terminated.

8. I was routinely required to perform dual roles as a Health Tech and the Intake Coordinator despite the reduction in pay to the Health Tech position. I complained to my immediate supervisor Myrna Marcinia of the disparities in job assignments and workloads for myself as compared to my counterparts of Caucasian or Hispanic descent. I was then retaliated

against and constantly threatened with a reduction in work hours or termination by Myrna or human resources.

9. Myrna Marcinia continued to assign disproportionate workloads and attempted to force me to perform specific duties, such as conducting group session with clients, in which I have no certification or training. At that point, due to the targeting, discrimination, and hostile work environment, I could not continue to my employment with Beach House and I resigned from the position in March 2019.

10. I believe Respondent, while I was engaged in a protected activity, discriminated against me because of race (black), created a hostile environment and engaged in retaliation in violation of Title VII of the Civil Rights Act, 1964 as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br><br>SIGNATURE OF COMPLAINANT |
| 07/22/2019     Bronson Theodore (Jul 22, 2019)<br><br>*Date*     *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(*month, day, year*) |

RECEIVED

JUL 3 1 2019

EEOC-MIAMI DISTRICT OFFICE

EEOC Form 161-B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | **Bronson Theodore**<br>**126 Bilbao Street**<br>**Royal Palm Beach, FL 33411** | From: | **Miami District Office**<br>**Miami Tower, 100 S E 2nd Street**<br>**Suite 1500**<br>**Miami, FL 33131** |
|---|---|---|---|

☐ *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **510-2019-05526** | **Frank C. Hernandez,**<br>**Investigator** | **(786) 648-5824** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

03/17/2021

Enclosures(s)

For: **Paul V. Valenti,**
**District Director**

*(Date Issued)*

cc:

**Gunster Yoakley And Stwart, P.A.**
**Holly L. Griffin, Esq.**
**777 South Flagler Dr. Suite 500E**
**West Palm Beach, FL 33401**

**Community Law**
Octavia O. Brown, Esq.
**122 E Main Street # 223**
**Lakeland, FL 33801**

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 510-2019-05525 |

| Florida Commission On Human Relations | and EEOC |
|---|---|

*State or local Agency, if any*

| Name (indicate Mr, Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Christy Turnquist** | 561-632-3330 | 01/10/1977 |

**Street Address**      City, State and ZIP Code

**P.O. Box 8442, West Palm Beach, Florida 33409**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **Beach House Center for Recovery** | **Over 30** | **561-337-3200** |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **13321 U.S. - 1, Juno Beach, Florida 33408** | RECEIVED | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

**JUL 3 1 2019**

| Street Address | City, State and ZIP Code | |
|---|---|---|

EEOC-MIAMI DISTRICT OFFICE

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest    Latest |

| ☒ RACE | ☐ COLOR | ☐ SEX | ☐ RELIGION | ☐ NATIONAL ORIGIN | 1/2019 | 3/26/2019 |
|---|---|---|---|---|---|---|

| ☒ RETALIATION | ☐ AGE | ☒ DISABILITY | ☐ GENETIC INFORMATION | |
|---|---|---|---|---|
| ☐ OTHER (Specify) | | | | ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

1. I began employment with Beach House Center for Recovery in December 2018 as a Therapist.

2. Beach House Center for Recovery provides substance abuse rehabilitation treatment for adults.

3. I was employed as a full-time employee.

4. My immediate supervisor was Anna Ciulla (Caucasian).

5. My job duties entailed meeting with clients for individual sessions and meeting with their families in separate sessions. After the completion of each of the sessions, I and other therapist were required to produce notes to reflect what occurred during the session.

6. I was treated differently than the therapist of Caucasian descent. Despite performing my assigned work duties and submitting my client notes, I was placed on the daily "corrections' list regarding my work product. I was aware similarly situated white therapists actually and routinely failed to timely submit their daily session notes, however they were not placed on the company wide "corrections" list, additionally they did not receive the scrutiny as I did regarding their session notes.

7. The corrections list is generated daily and is disseminated company-wide. The list is a display of employees with open or incomplete assignments. I and other black employees, and more often than not only the black employees were consistently placed on the list; and often, the list was inaccurate.

8. I discussed the inaccuracies of corrections list with my manager.

9. After I brought the inaccuracies of the corrections list to the attention of my immediate supervisor the targeting increased. The assignments on the corrections list increased despite the assignments being completed. When I again addressed the inaccuracies, I was terminated.

10. I believe Respondent discriminated against me because of race (black), in violation of Title VII of the Civil Rights Act, 1964 as amended, engaged in retaliation, and created a hostile work environment while I engaged in a protected activity.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the above is true and correct. | SIGNATURE OF COMPLAINANT |
| 07/23/2019 *Christy E Tranquist (Jul 23, 2019)* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| Date            Charging Party Signature | |

RECEIVED

JUL 3 1 2019

EEOC-MIAMI DISTRICT OFFICE

APR 0 8 2021

EEOC Form 161-B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
EEOC Miami District Office

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:  **Christy Turnquist**
c/o Octavia O. Brown, Esq.
Community Law, LLC.
122 E Main Street # 233
Lakeland, FL 33801

From:  **Miami District Office**
**Miami Tower, 100 S E 2nd Street**
**Suite 1500**
**Miami, FL 33131**

| On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **510-2019-05525** | **Frank C. Hernandez,** **Investigator** | **(786) 648-5824** |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court** <u>WITHIN 90 DAYS</u> **of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X]  More than 180 days have passed since the filing of this charge.

[ ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court** <u>WITHIN</u> <u>90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred** <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Marissa Cosculluela
Digitally signed by Marissa Cosculluela
DN: cn=Marissa Cosculluela, o, ou=EEOC - Miami District Office, email=Marissa.Cosculluela@eeoc.gov, c=US
Date: 2021.03.22 12:54:06 -04'00'

03/22/2021

Enclosures(s)

For:  **Paul V. Valenti,**
**District Director**

*(Date Issued)*

cc:

**Gunster, Yoakley And Stewart, P.A.**
**Holly L. Griffin, Esq.**
**777 South Flagler Dr Suite 500e**
**West Palm Beach, FL 33401**

# CHARGE OF DISCRIMINATION

Charge Presented To: Agency(ies) Charge No(s):

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

☐ FEPA
☒ EEOC  510-2019-05532

**Florida Commission On Human Rights** and EEOC

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Mr. Torrey White** | **904-415-9661** | **02/21/1982** |

Street Address                City, State and ZIP Code

**3603 Alder Drive Unit A3, West Palm Beach, Florida 33417**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **Beach House Center for Recovery** | **Over 30** | **561-337-3200** |

Street Address                City, State and ZIP Code

**13321 U.S. - 1, Juno Beach, Florida 33408**

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address                City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **10/2018**   Latest **4/2019**

☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN

☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION

☒ OTHER (Specify)

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

1. I began employment with Beach House Center for Recovery in October 2018 as a Case Manager.

2. Beach House Center for Recovery provides substance abuse rehabilitation treatment for adults.

3. I was employed as a full-time employee.

**RECEIVED**

**JUL 31 2019**

4. My immediate supervisor was Brendan Shaw.

5. My job duties entailed meeting with assisting clients in a residential setting with daily needs.

EEOC-MIAMI DISTRICT OFFICE

6. I was disciplined for failing to complete discharge documentation for a client, however, I never received any training regarding discharged documents. White or Hispanic employees were never disciplined for similar acts.

7. I received unequal disciplinary action regarding company property, specifically the company cell phone. Despite not being responsible for the loss of the company property, I was required to reimburse the company for the property and I was verbally berated and disciplined. Another white co-worker lost the phone, and was not required to reimburse the company, additionally, they received no disciplinary action.

8. Despite performing my assigned work duties, I was assigned a heavier workloads and duties. I was treated differently than case managers and other employees of Caucasian and or Hispanic descent. The duties were overwhelming and were often in areas where I failed to receive proper training. White employees were not required to perform similar duties, and if they complained about an issue, then they were met with responsive and professional responses.

9. When I had voiced complaints about lack of training and overwhelming job duties, I was ignored. Ultimately, when the duties became overwhelming to the point of violations of policies, and safety for the clients, I presented my concerns to them, and I was summarily terminated.

10. I believe Respondent discriminated against me because of race (black), in engaged in retaliation, and created a hostile work environment while I engaged in a protected activity in violation of Title VII of the Civil Rights Act, 1964 as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the above is true and correct. | SIGNATURE OF COMPLAINANT |
| 7/14/2019 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| Date          Charging Party Signature | |

RECEIVED

JUL 3 1 2019

EEOC-MIAMI DISTRICT OFFICE

EEOC Form 161-B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | | |
|---|---|---|
| To: **Torrey White**<br>**3603 Alder Drive Unit #A3**<br>**West Palm Beach, FL 33417** | From: | **Miami District Office**<br>**Miami Tower, 100 S E 2nd Street**<br>**Suite 1500**<br>**Miami, FL 33131** |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **510-2019-05532** | **Frank C. Hernandez,**<br>**Investigator** | **(786) 648-5824** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court** <u>**WITHIN 90 DAYS**</u> **of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court** <u>**WITHIN 90 DAYS**</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred** <u>**more than 2 years (3 years)**</u> **before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

|  |  | 03/17/2021 |
|---|---|---|
| Enclosures(s) | For: **Paul V. Valenti,**<br>**District Director** | *(Date Issued)* |

cc: **Gunster Yoakley And Stewart, P.A.**<br>**Holly L. Griffin, Esq.**<br>**777 South Flagler Dr Suite 500E**<br>**West Palm Beach, FL 33401**    **Community Law, LLC.**<br>**Octavia O. Brown, Esq.**<br>**122 E Main Street # 233**<br>**Lakeland, FL 33801**